IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Ronald R. Shea, )| |
| ) | Case No. 12-CV-50201 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Winnebago County Sheriff's ) | |
| Office, et al., ) | |
| ) | Judge Philip G. Reinhard |
| Defendants. ) | |

## ORDER

For the reasons stated below, defendants' motions to dismiss [105], [106], [123], [128], are granted. The Koehler defendants' motion to dismiss [138] is granted in part and denied in part. All of plaintiff's claims against the Koehler defendants are dismissed except for plaintiff's battery claim against Carolyn Koehler (count two). The Winnebago County defendants' motion to dismiss [123] is granted in its entirety. The University of Illinois College of Medicine's motion to dismiss [105] is granted. Defendant Wendy Lowery's motion to dismiss [106] is granted. Defendant Shelli Sublett's motion to dismiss [128] is granted. Tammie Hutzler is also dismissed. Carolyn Koehler is the only defendant that remains. The Magistrate Judge is to schedule an in person status hearing with plaintiff and all defense counsel including those where the claims have been dismissed.

## STATEMENT-OPINION

On May 29, 2012, *pro se* plaintiff Ronald Shea filed a multi-count complaint, pursuant in part, to 42 U.S.C. § 1983, against a number of defendants. [1]. The complaint was 104 pages long and inappropriately included extensive narrative with irrelevant legal arguments and legal citations. *See* [1]. Because of this, the court, *sua sponte,* struck the complaint and granted plaintiff leave to file an amended complaint that complied with Federal Rule of Civil Procedure 8(a)(2). [76].

On January 9, 2014, plaintiff sought leave to file an amended complaint and attached his proposed amended complaint with his written motion. *See* [81]; [81-1]. After reviewing the proposed amended complaint, the court found it suffered from the same deficiencies as the original complaint and therefore issued an Order striking the first amended complaint. In the court's Order, it granted plaintiff one final opportunity to file a complaint that complied with the Federal Rules of Civil Procedure. *See* [85].

On February 21, 2014, plaintiff submitted his second amended complaint. *See* [89]. In it, he asserted twenty-three causes of action against eighteen defendants. The court reviewed this complaint and determined plaintiff had cured many of the deficiencies in his prior two complaints. *See* [91]. As a result, the court permitted plaintiff to proceed with the case.

Between May 12, 2014 and June 27, 2014, seventeen of the eighteen named defendants in the second amended complaint filed five separate motions to dismiss.[1] *See* [105], [106], [123], [128], & [138]. While each motion raised unique arguments with respect to each set of defendants, all defendants argued that plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6). Plaintiff has responded to each of the motions and all are ripe for the court's review. The court notes that its analysis has been hampered by the excessive number of claims made by plaintiff, as well as the conclusory allegations against multiple defendants.

"To survive a motion to dismiss under Rule 12 (b)(6), the complaint must state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Yeftich v. Navistar*, 722 F.3d 911, 915 (7th Cir. 2013) (internal quotation marks and citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citations omitted). In cases such as these, the inference of liability is only "speculative." *Id.*

The second amended complaint purports to assert federal claims under Section 1983, the Americans with Disabilities Act ("ADA"), and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The remaining claims are brought under state law.

All of the claims relate to events which allegedly began in November 2011. At this time, plaintiff states that he moved from California to Illinois to help his aging mother. After he moved, defendants Carolyn and Doug Koehler (plaintiff's sister and brother-in-law), allegedly engaged in some sort of conspiracy to seize control of his parents' estate and prevent plaintiff from seeing his mother. Specifically, plaintiff claims that on November 26, 2011, Carolyn and Doug Koehler entered his mother's home, kicked in his bedroom door, and "attempted to murder [him]." [140] at 2. He states that on the said evening there were three different attacks and the last of which involved Carolyn Koehler "denud[ing] [p]laintiff of his blanket and pillow, [and] abrading the cornea of his [] left eye." *Id.* A few weeks after the attacks, plaintiff claims Carolyn and Doug Koehler tried to have him arrested and evicted from his mother's home. He contends the Koehlers filed false charges against him and caused him to suffer physical injuries as well as financial hardship.

---

[1] The remaining defendant, Tammie Hutzler, filed an answer to the complaint. *See* [101].

At some point after this incident, plaintiff claims that he was wrongfully incarcerated. While the circumstances leading up to his arrest are not explained, it is clear that plaintiff believes he was wrongfully detained and wrongfully prosecuted. Also around this time, plaintiff claims he received medical treatment from the University of Illinois College of Medicine. Although the type of treatment is not specified and the exact time he received such treatment is not clear, it seems plaintiff believes his medical treatment was inadequate and that this inadequate treatment was somehow related to his incarceration. These allegations form the basis of all twenty-three of plaintiff's claims.

Counts one through fourteen of the second amended complaint are asserted solely against Carolyn and Doug Koehler, (hereinafter "the Koehler defendants"). These claims relate to the events which allegedly occurred in November 2011. The first thirteen counts are state law claims for civil conspiracy, battery, assault, "intrusion into seclusion," trespass, false imprisonment, trespass to chattels, conversion, malicious prosecution, defamation, fraud, intentional infliction of emotional distress, and "restitution damages." [89] at 6-11. Count fourteen is the only federal claim against the Koehler defendants. In count fourteen, plaintiff alleges that the Koehler defendants are liable for violations of the civil RICO statues because they "attempted to transfer part or all of the estate of Phyllis and Gerald Shea across state lines . . . through multiple fraudulent reports and misrepresentations using interstate highways, interstate wire, and United States Mail." [89] at 11-12.

In count fifteen, plaintiff asserts a malicious prosecution claim. This claim is brought against the Koehler defendants as well as defendant Tammie Hutzler, a senior home care provider in Rockford, Illinois. Here, plaintiff claims the Koehler defendants directed Hutzler to file a restraining order to prevent plaintiff from seeing his mother but this restraining order "had no legitimate purpose under the law" and was "denied outright by the court." [89] ¶ 46.

Counts sixteen and seventeen are asserted against Winnebago County, the Winnebago County Sheriff's Office, Winnebago Deputy Sheriff Douglas Dobbs, Winnebago County Sheriff Richard Meyers, Winnebago Deputy Sheriff Lorenzo Thompson, Correctional Officer Rob Lukowski, Correctional Officer Anthony Enna, Correctional Officer Bryan Johnson, Correctional Captain Tim Owens, and Superintendent of the Winnebago County Jail, Andrea Tack (hereinafter, "the Winnebago County defendants"). In count sixteen, plaintiff claims the Winnebago County defendants are liable under Section 1983 because they "wrongfully incarcerated [p]laintiff for over 70 hours" and denied him his right to a phone call from the Winnebago County Jail. *See* [89] ¶ 48. Count sixteen also alleges the Winnebago County defendants are liable under Section 1983 because they refused to 1) treat plaintiff for injuries he sustained; 2) provide plaintiff warm clothing; 3) provide plaintiff medication; and 4) allow plaintiff to file a criminal complaint against the Koehler defendants. *See* [89] at 12-15.

Count seventeen is an ADA claim against the Winnebago County defendants. Here, plaintiff claims he informed the Winnebago County defendants of the physical conditions from

which he suffered and they failed to provide him reasonable accommodations for his disabilities. [89] at 16.

Counts sixteen and seventeen are also asserted against the University of Illinois College of Medicine at Rockford, ("UIC")[2] , Wendy Lowery, Shelli Sublett and two Doe defendants. While plaintiff fails to allege why these defendants are liable in counts sixteen and seventeen, they are nonetheless named defendants.

Counts eighteen through twenty-two are asserted solely against UIC, Lowery, Sublett, and two Doe defendants. It appears as though plaintiff alleges UIC is liable for various causes of action because Wendy Lowery and Shelli Sublett were UIC employees and were somehow involved in plaintiff's inadequate medical treatment and illegal incarceration.

In count eighteen, plaintiff attempts to set forth a false imprisonment claim. He alleges Lowery recommended that he be incarcerated and states that this recommendation was part of the reason he was wrongfully detained. He also blames Sublett for his incarceration. He states Sublett failed to take "appropriate actions" after an interview with plaintiff and drafted a report that contributed to his incarceration. [89] ¶ 61.

In count nineteen, plaintiff alleges a "false light" claim against UIC, Lowery, Sublett and a Doe defendant. Here, he claims that Lowery and Sublett "maliciously published representations about [his] mental health" in a false light. *Id.* ¶ 62.

In count twenty, plaintiff alleges UIC, Sublett and a Doe defendant are liable for negligence. Plaintiff claims that Sublett "owed a duty to accurately record her conversation with [p]laintiff" and had a duty to take reasonable steps to confirm plaintiff's claims and act accordingly, but breached those duties. *Id.* ¶ 63.

Count twenty-one purports to allege that UIC, Sublett and two Doe defendants are liable for battery. Plaintiff claims Sublett knew that he suffered from an auto-immune disorder and had extreme temperature sensitivity, but she ignored his condition and maliciously exposed plaintiff's body to harmful temperatures while he was incarcerated. *Id.* ¶ 64.

Count twenty-two alleges UIC, Lowery, Sublett and two Doe defendants are liable for intentional infliction of emotional distress. *Id.* ¶ 65. Plaintiff alleges that the aforementioned defendants were "reckless, wanton, and malicious," and caused plaintiff to suffer "emotional trauma." *Id.*

---

[2]In its motion to dismiss, the University of Illinois College of Medicine points out that the appropriate entity to be sued is the Board of Trustees of the University of Illinois and not the University of Illinois College of Medicine. The court agrees. However, for the purposes of this motion, the court will refer to this defendant as UIC.

Plaintiff's final claim (count twenty-three) is asserted against State's Attorneys Joe Bruscato and Marilyn Hite Ross. Plaintiff brings this claim under Section 1983 and alleges that Bruscato and Ross are liable because they "wrongfully engaged in a protracted prosecution of [p]laintiff." *Id.* ¶ 66.

Plaintiff seeks monetary relief from all defendants on all counts. He asks for exemplary and punitive damages. *See* [89] at 19-30.

Currently before the court are five motions to dismiss. The Koehler defendants filed a motion seeking to dismiss counts one through fifteen. *See* [138]. In their motion, they argue that plaintiff's claims fail pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Winnebago County defendants also filed a motion to dismiss. *See* [123]. In it, they argue that counts sixteen and seventeen should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 8(a)(2). They also move to dismiss count twenty-three on behalf of defendants Joe Bruscato and Marilyn Hite Ross. They argue that count twenty-three should be dismissed pursuant to Rule 12(b)(6) and pursuant to the doctrine of prosecutorial immunity. [123] at 5.

UIC filed its own motion to dismiss. *See* [105]. In its motion, UIC argues that it should be dismissed from this suit pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). UIC contends that it is a state agency and therefore entitled to Eleventh Amendment immunity.

Shelli Sublett has also filed a motion to dismiss. *See* [128]. She argues that plaintiff's claims against her fail because they are untimely and because they fail to satisfy the federal notice pleading standards. *See* [128] at 4-5.

Wendy Lowery has filed a similar motion to dismiss. *See* [106]. In her motion, Lowery contends plaintiff's claims fail because they are barred by the relevant statute of limitations and because they fail to state a claim.

The court will address each motion in turn.

## A. The Koehler Defendants' Motion to Dismiss [138]

The Koehler defendants seek to dismiss counts one through fifteen of the second amended complaint. *See* [138]. In their motion, they contend that plaintiff's claims should be dismissed pursuant to Rule 12(b)(6). They also argue that plaintiff's claims are deficient because they inappropriately group both Koehler defendants together and because plaintiff does not have standing to raise claims regarding his parents' estate since he does not have a beneficial interest.

Not surprisingly, plaintiff disagrees. He argues that his allegations are sufficient and the Koehler's entire motion should be denied. For the sake of clarity, the court will individually analyze each count.

*1. Count One: Civil Conspiracy*

In count one, plaintiff claims Carolyn and Doug Koehler are liable for civil conspiracy. He states that the Koehler's "acted in concert, with malice and with the common purpose of isolating Phyllis Shea from her son, Ronald Shea [plaintiff], in order to further their scheme [of] wrongfully seizing and transporting some or all of the estate of Phyllis Shea and Gerald Shea across state lines." [89] ¶ 30. Aside from these threadbare allegations, plaintiff offers no details to support his claim.

The Koehler defendants argue these allegations are conclusory and fail to satisfy the federal notice pleading standards. The court agrees.

"The elements of an Illinois civil conspiracy are (1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the further of which one of the conspirators committed an overt tortious or unlawful act." *Davidson v. Worldwide Asset Purchasing, LLC*, 914 F. Supp. 2d 918, 923-34 (N.D. Ill. 2012) (quoting *Milliman v. McHenry County*, No. 11-C-50361, 2012 WL 5200092 at *3 (N.D. Ill. Oct. 22, 2012)) (citing *Fritz v. Johnson*; 807 N.E.2d 461, 470 (Ill. 2004)). Courts in this Circuit have held that an actionable conspiracy requires a plaintiff to "(1) point to evidence showing the existence of a conspiracy and the defendants' knowing participation in that conspiracy and (2) allege specific facts warranting an inference that the defendant was a member of the conspiracy." *Id.* (citing *Hollinger Int'l v. Hollinger Inc.*, No. 04-0698, 2005 WL 589000 at *14 (N.D. Ill. March 11, 2005)). Simply characterizing a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss. *Id.* (citing *Leman v. Turner*, No. 10-2169, 2010 WL 4627656 at *3 (N.D. Ill. Nov. 5, 2010)).

Plaintiff's allegations here merely characterize a combination of acts as a conspiracy. Although he claims the Koehlers acted in concert to wrongfully seize his parents' estate, plaintiff fails to provide details or other allegations regarding an overt act which was done to further the alleged conspiracy. In addition to this, the complaint is void of any facts which allow the court to infer that each of the Koehlers was a knowing participant in the alleged conspiracy. As such, the court concludes plaintiff's civil conspiracy claim fails and count one is dismissed.

*2. Count Two: Battery*

In count two, plaintiff alleges the Koehler defendants are liable for battery. The basis for his claim is the "three successive attacks" which allegedly occurred on November 26, 2011. [89] ¶ 31. Plaintiff claims Carolyn Koehler "repeatedly kicked [his] head . . ." and this caused him to

sustain various injuries. *Id.* He also claims Carolyn Koeher "denuded" him of his pillow and blanket and this caused an abrasion to his eye. *See id.* Finally, he states both Koehler's "forcibly escorted [p]laintiff down the hallway." [89] ¶ 32.

In Illinois, a claim for battery requires a plaintiff to allege that a defendant "(a) acts intending to cause a harmful or offensive contact with the person . . . and (b) a harmful contact with the person . . . directly or indirectly results." *Hadad v. World Fuel Services, Inc.*, No. 13-C-3802, 2013 WL 6498894 at *3 (N.D. Ill. Dec. 11, 2013) (quoting *Bakes v. St. Alexius Med. Ctr.*, 955 N.E.2d 78, 85-86 (Ill. App. Ct. 1st Dist. 2011)). In other words, battery is defined as "the unauthorized touching of another's person." *Benitez v. American Standard Circuits, Inc.*, 675 F. Supp. 2d 745, 767 (N.D. Ill. 2010).

While it is clear that plaintiff's allegations regarding Carolyn Koehler "kick[ing]" him in the head constitute offensive or harmful contact, plaintiff's allegations concerning Douglas Koehler do not. Indeed, in their motion to dismiss, the Koehler defendants argue that plaintiff has failed to allege any damages were the result of Doug Koehler escorting plaintiff down the hallway and has failed to allege that Douglas Koehler's actions were harmful. *See* [141] at 8-9. Because of this, the court dismisses Douglas Koehler from count two. Plaintiff's battery claim against Carolyn Koehler survives dismissal.

*3. Count Three: Assault*

In count three, plaintiff claims the Koehler defendants are liable for assault. He states that on November 26, 2011, "Doug Koehler brandished his fists at [p]laintiff." [89] ¶ 33. He further claims that "[d]uring all three attacks, and both times he was forcibly escorted down the hallway [he] was in imminent fear of being seriously injured or murdered by both [Koehlers]." *Id.*

The Koehler defendants argue these allegations fail to state a claim for assault. First, they point out that there are no allegations concerning Carolyn Koehler. Next, they contend that plaintiff has failed to allege facts which indicate how Douglas Koehler's actions caused a reasonable apprehension. The court agrees.

In Illinois, a claim for civil assault "involves intentional conduct that places the plaintiff in reasonable apprehension of an imminent battery." *Padilla v. Bailey*, No. 09-C-8068, 2011 WL 3045991 at *8 (N.D. Ill. July 25, 2011) (citing *McNeil v. Carter*, 742 N.E.2d 1277 (Ill. 2001)). *See also Kijonka v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004). To survive dismissal the claim "must include an allegation of reasonable apprehension of imminent battery." *McNeil v. Carter*, 742 N.E.2d 1277, 1281 (Ill. App. Ct. 2001).

As a preliminary matter, count three is void of any allegations with respect to Carolyn Koehler and any action that could amount to an assault. While the court has already acknowledged that plaintiff's allegations against Carolyn Koehler for battery survive dismissal,

his allegations concerning her liability for assault do not. As a result, Carolyn Koehler is dismissed from count three.

Next, plaintiff merely states Doug Koehler is liable because he "brandished his fists at [p]laintiff." [89] ¶ 33. Plaintiff does not allege that Doug Koehler did this intentionally and does not allege that Doug Koehler's conduct caused a "reasonable apprehension" of an imminent battery. The court is cognizant of its duty to construe all facts in the light most favorable to plaintiff at this stage in the litigation, but here there are simply insufficient facts and a complete lack of contextual background for the court to infer that the conduct of Doug Koehler caused a reasonable apprehension of imminent battery. *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("[t]hreadbare recitals of cause of action supported by mere conclusory statements" are insufficient to survive a motion to dismiss). As such, Douglas Koehler is dismissed from count three and it is dismissed.

### 4. Count Four: Intrusion into Seclusion

In count four, plaintiff claims the Koehler defendants are liable for "intrusion into seclusion." [89] ¶ 34. He states that he sleeps with his door closed and has an expectation of privacy while he sleeps. Plaintiff claims the Koehlers are liable for intrusion into seclusion because they kicked open his locked bedroom door and entered his room while he was sleeping. *See id.*

Illinois courts have held that the tort of intrusion upon seclusion requires the following elements: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering." *Acosta v. Scott Labor LLC*, 377 F. Supp. 2d 647, 649-50 (N.D. Ill. 2005) (citing *Johnson v. K Mart Corp.*, 723 N.E.2d 1192 (Ill. App. Ct. 2000)). "If a plaintiff does not allege private facts, the other three elements of the tort need not be reached." *Id.* (citing *Busse v. Motorola, Inc.*, 813 N.E.2d 1013 (Ill. App. Ct. 2004). "Examples of inherently "private facts" include "a person's financial, medical, or sexual life, or a peculiarly private fact of an intimate[,] personal nature."" *Id.* (quoting *Green v. Chicago Tribune Co.*, 675 N.E.2d 249 (Ill. App. Ct. 1996)(Cahill J., dissenting)).

After reviewing the allegations in the second amended complaint, the court does not find plaintiff has stated a claim. The court is aware that some Illinois courts have determined that invading someone's home is an example of intrusion upon seclusion. *See e.g., Horgan v. Simmons*, 704 F. Supp. 2d 814, 822 (N.D. Ill. 2010) (citing *Benitez v. KFC Nat'l Mgmt. Co.*, 714 N.E.2d 1002, 1006 (Ill. App. Ct. 1999)). However, in this case, the Koehler defendants did not invade plaintiff's home. Rather, Carolyn Koehler entered her mother's home and entered the room plaintiff was sleeping in. While her entry may have been an intrusion and may have caused a disturbance in plaintiff's sleep, this is not the type of intrusion required to state a claim of intrusion upon seclusion. Furthermore, plaintiff has failed to include allegations regarding any

anguish or suffering that he suffered as a result of the intrusion. This is a required element to state a claim. For these reasons, plaintiff's claim fails. Count four is dismissed.

*5. Count Five: Trespass*

Next, plaintiff contends the Koehler defendants are liable for trespass. In count five, he claims that he "established constructive possession over his bedroom [in his mother's home and Carolyn and Doug Koehler ] . . . interfered with [his] use and enjoyment of his bedroom." [89] ¶ 35.

The Koehler defendants argue these allegations fail to set forth a claim because plaintiff was not on his property and was instead a guest of his mother. They further claim that plaintiff has not identified any damages as a result of the trespass. Plaintiff contends his allegations regarding the constructive possession of his bedroom are sufficient. The court finds the Koehler's argument more persuasive.

A trespass claim under Illinois law requires a plaintiff to plead "negligent or intentional conduct by the defendant which has resulted in an intrusion on the plaintiff's interest in exclusive possession of land." *Village of DePue, Illinois, v. Viacom Intern., Inc.*, 632 F. Supp. 2d 854, 865 (C.D. Ill. 2009) (citing *Porter v. Urbana-Champaign Sanitary Dist.*, 604 N.E.2d 393, 397 (Ill. App. Ct. 1992)).

In the second amended complaint, plaintiff admits that he had "moved into his father's office at the invitation of his mother" and that he was residing at his mother's home. [89] ¶ 35. Thus, it is clear he did not have "exclusive possession" of his mother's home. Additionally, count five does include any allegations concerning damages. As such, plaintiff can state a claim of trespass. Count five is dismissed.

*6. Count Six: False Imprisonment*

Count six alleges the Koehler defendants are liable for false imprisonment. Plaintiff claims the Koehlers "intentionally and with malice, wrongfully restrained and confined" him "when they forcibly escorted him down the hallway in their grip, and under the threat of murder." [89] ¶ 36. He also alleges that they "wrongfully confined [him] to his bedroom by blocking his bedroom doorway with their bodies." *Id.*

"In Illinois, the "common law tort of false imprisonment is defined as an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant."" *Meadows v. Rockford Housing Authority*, No. 12-C-50310, 2014 WL 1116357 at *5 (N.D. Ill. Feb. 20, 2014) (quoting *Hanna v. Marshall Field & Co.*, 665 N.E.2d 343 (Ill. 1996)). In count six, plaintiff claims the Koehler defendants are liable because they forcibly escorted him down a hallway and confined him to his bedroom. He fails to allege that either instance was against his will. Additionally, plaintiff has failed to allege that the Koehler's use of force was unlawful or

unreasonable.  Because of this, the court concludes the allegations fall short of establishing a claim for false imprisonment.  Count six is dismissed.

*7.  Count Seven: Trespass to Chattels*

Count seven of the second amended complaint purports to allege a claim for trespass to chattels.  Here, plaintiff alleges that the Koehler defendants "seized one or more of the cushions on which [p]laintiff was sleeping and removed [the cushions] from [p]laintiff's bedroom." [89] ¶ 37.  He also states Carolyn Koehler "seized the bed clothing" and "[b]oth seizures interfered with [p]laintiff's lawful possession . . ." *Id.*

"An injury to or interference with possession, with or without physical force, constitutes a trespass to personal property." *Sotelo v. Direct Revenue, LLC*, 384 F. Supp. 2d 1219, 1229-30 (N.D. Ill. 2005).  "[T]here are two ways to commit this tort: 'A trespass to a chattel may be committed by intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" *Id.* (quoting Restatement (Second) of Torts § 217).  Damages are a required element to state a valid claim for trespass to chattels.  *Id.*; *see also Najieb v. Chrysler-Plymouth*, No. 01-C-8295, 2002 WL 31906466 at *10-11 (N.D. Ill. Dec. 31, 2002).

Plaintiff fails to allege that he suffered damage as a result of the alleged interference to his property.  Instead, he only alleges that his possession was interfered with.  This is insufficient.  As such, count seven is dismissed.

*8.  Count Eight: Conversion*

In count eight*,* plaintiff claims the Koehler defendants are liable for conversion.  He states that they "intentionally and maliciously dissembled [his] bed and took wrongful dominion over it, thereby depriving [him] the use and enjoyment of his property." [89] ¶ 38.

The Koehler defendants argue this allegation is conclusory and fails to state a claim.  They also point out that plaintiff only alleged that the bed was dissembled, he did not allege it was damaged or no longer able to be used.

To state a claim for conversion, plaintiff must allege that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendants wrongfully and without authorization assumed control, dominion or ownership over the property.  *Federal Deposit Insurance Corporation v. Hillgamyer*, No. 11-CV-7502, 2013 WL 6234626 at *4 (N.D. Ill. Dec. 2, 2013) (citing *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. App. Ct. 2008)).  Plaintiff fails to allege that he demanded possession of the property.  He also does not allege that he had an absolute and unconditional right to immediate possession of the property.  Accordingly, the allegations are deficient and count eight is dismissed.

*9. Count Nine: Malicious Prosecution*

Count nine purports to set forth a malicious prosecution claim against the Koehler defendants. Here, plaintiff alleges that "Carolyn Koehler intentionally and maliciously filed a false criminal complaint against [plaintiff] and maintained charges through criminal trial." [89] ¶ 39. Plaintiff claims these charges were ultimately resolved in his favor.

In Illinois, a claim for malicious prosecution requires (1) the commencement of criminal proceedings by the defendants; (2) the termination of those proceedings in favor of the plaintiff; (3) the absence of probable cause for those proceedings; (4) the presence of malice; and (5) resulting damages. *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013) (citations omitted). The absence of any of these elements prohibits a plaintiff from pursuing the claim. *Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 986-87 (N.D. Ill. 2009) (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)).

As a preliminary matter, the court notes that plaintiff has failed to allege that Douglas Koehler was involved in filing any criminal proceedings against him. As such, plaintiff has not stated a claim against Douglas Koehler and he is dismissed from count nine. Next, plaintiff fails to allege an absence of probable cause and fails to provide allegations that the criminal proceedings were terminated in a manner indicative of innocence. *See Shkrobut v. City of Chicago*, No. 04-C-8051, 2005 WL 2787277 at *4 (N.D. Ill. Oct. 24, 2005) (dismissing a plaintiff's state law malicious prosecution claim because the plaintiff failed to allege "the charges against him were withdrawn for reasons consistent with innocence."). Consequently, the entire claim fails and count nine is dismissed.

*10. Count Ten: Defamation*

In count ten, plaintiff asserts a defamation claim against the Koehler defendants. The second amended complaint states that the Koehlers are liable for defamation because they "published false allegations about [p]laintiff to multiple third parties." [89] ¶ 40. Specifically, plaintiff contends the Koehlers told others that plaintiff battered Carolyn Koehler, that he was involved in a hit-and-run accident, and that he was stealing the keys to his mother's home. *Id.* Plaintiff claims these allegations were both false and "injurious" to his reputation. *Id.*

The Koehler defendants argue these allegations lack specificity and dismissal is warranted. The court agrees.

"Defamation actions provide redress for false statements of fact that harm a plaintiff's reputation." *Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 639 (7th Cir. 2005) (citing *Brennan v. Kadner*, 814 N.E.2d 951 (Ill. 2004)). To establish defamation, a plaintiff must show that the defendant made a false statement about him; that the defendant caused an unprivileged publication of the statement to a third party; and the publication of that statement harmed him. *Id.* (citation omitted). "A complaint that does not provide any context for the statement does not

state a plausible claim for relief, and does not give adequate notice of the claim." *Arvengix, LLC v. Seth*, No. 13-CV-1253, 2014 WL 1698374 at *6 (C.D. Ill. April 29, 2014) (citing *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1017 (N.D. Ill. 2012)).

Here, plaintiff fails to specify when the alleged defamatory statements were made, who made such statements (Carolyn or Douglas Koehler), and how the statements were made. Instead, he merely states that the alleged defamatory statements were made "[b]y both written and spoken word." [89] ¶ 40. This does not provide sufficient context and does not give the Koehler defendants adequate notice of the claim. Accordingly, count ten is dismissed.

*11. Count Eleven: Fraud*

Count eleven attempts to set forth a claim for common law fraud. Plaintiff alleges that the Koehler defendants are liable for fraud because they filed a false report with the police and this resulted in plaintiff's wrongful incarceration and prosecution. He also claims that the Koehler defendants garnered the assistance of a woman named Kelly Peters and instructed her to report that she had been the victim of a hit-and-run accident in plaintiff's driveway. *See* [89] ¶ 41. He alleges that this was false and the Koehlers are therefore liable for fraud.

The Koehlers argue these allegations fail to satisfy the heightened pleading standards required for claims of common law fraud. Plaintiff disagrees and states that the details within the second amended complaint are sufficient.

"While liberal notice pleading under Rule 8(a) is sufficient for most complaints, Rule 9(b) imposes heightened requirements for actions in fraud." *Putzier v. Ace Hardware Corporation*, No. 13-C-2849, 2014 WL 2928236 at *3 (N.D. Ill. June 25, 2014) (citing Fed. R. Civ. P. 9(b)). A complaint alleging fraud must state "with particularly the circumstances constituting fraud." *Id.* A plaintiff must plead the "who, what, when, where, and how: the first paragraph of any newspaper story." *Id.* (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). This is true for fraud claims based on state law when brought in federal court. *Id.* (citing *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). In Illinois, the basic elements of common-law fraud are (1) a false statement of material fact; (2) the speaker's knowledge or belief that the statement was false; (3) the speaker's intent that the statement induce the recipient to act; (4) the recipient's belief and reliance on the statement and right to do so; and (5) damages resulting from the reliance. *Elmhurst & Dempster, LLC v. Fifth Third Bank*, No. 13 C 3125, 2013 WL 5408851 at *6 (N.D. Ill. Sept. 26, 2013) (citing *All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 690 (Ill. App. Ct. 2010)).

As a threshold matter, the court notes that plaintiff has failed to allege that the Koehler defendants made any fraudulent statements to him which he relied upon. Instead, plaintiff alleges that the Koehlers made various false statements to the "sheriff's police," the "Illinois Attorney" and to "[p]laintiff's mother." [89] ¶ 41. These allegations do not indicate that plaintiff relied upon any fraudulent statements and as a result, plaintiff has not stated a claim for fraud.

*See Thompson v. Village of Monee*, No. 12-C-5020, 2013 WL 3337801 at *26 (N.D. Ill. July 1, 2013) (dismissing a plaintiffs' fraud claim because the plaintiffs failed to allege that the defendants made false statements which they relied upon).

Next, the allegations in count eleven do not satisfy the heightened pleading standards imposed by Rule 9(b). Plaintiff merely alleges that the Koehlers filed fraudulent reports on certain dates and made false claims to police officers on certain dates. He does not explain which Koehler defendant made each statement. *See Tublinal v. BAC Home Loans Servicing, L.P.*, No. 11-C-04104, 2012 WL 2929959 at *7 (N.D. Ill. July 18, 2012) (stating that Rule 9(b) requires the plaintiff to identify the speaker of the alleged fraudulent statement). Therefore, plaintiff has not sufficiently pled a claim for fraud and count eleven must be dismissed.

## 12. Count Twelve: Intentional Infliction of Emotional Distress

In count twelve, plaintiff alleges that the Koehler defendants are liable for intentional infliction of emotional distress. Specifically, the second amended complaint states that "the actions of Carolyn and Douglas Koehler were an outrage that shocks one's conscience." [89] ¶ 43. Plaintiff claims these actions caused him "unremitting anxiety and profound emotional distress." *Id.*

A claim for intentional infliction of emotional distress requires a plaintiff to allege that "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Sweamigen-El v. Cook Cnt. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010) (citations omitted). "To meet the extreme and outrageous standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* (citation omitted).

Here, plaintiff fails to specify what actions were extreme and outrageous. Furthermore, he fails to allege that the Koehlers knew there was a high probability that their actions would cause severe emotional distress. "Illinois courts have consistently held that the conduct alleged must be particularly egregious; it has not been enough that the defendant has acted with an intent which is tortious or even criminal . . .[.]" *Michael v. Bell*, No. 11-CV-4484, 2012 WL 3307222 at *5 (N.D. Ill. Aug. 13, 2012) (citing *Public Fin. Corp. v. Davis*, 360 N.E.2d 765 (Ill. 1976)). Plaintiff's conclusory allegations that the Koehler defendants' actions were an outrage to the conscience are not sufficient. Therefore, the court dismisses count twelve. *See Thompson*, 2013 WL 3337801 at *23.

## 13. Count Thirteen: Restitution Damages

Count thirteen purports to set forth a claim for "restitution damages." In this count, plaintiff alleges that he has suffered "permanent neurological damage" because of the alleged attacks that occurred in November 2011. [89] ¶ 44. He further states that he "invested

significant money" to try to move to Illinois and live with his mother, but this investment was lost when the Koehlers "orchestrated the unlawful eviction of [p]laintiff from his mother's home[.]" *Id.*

The Koehler defendants argue that count thirteen must be dismissed because restitution damages is not a recognized cause of action in Illinois. Plaintiff responds by acknowledging that "the term is generally related to criminal restitution under Illinois law." [140] at 10.

The court is unaware of any authority that provides restitution damages as a separate cause of action. Thus, insofar as plaintiff intends restitution damages to constitute a distinct cause of action in count thirteen, that claim is dismissed. *See Stericycle, Inc. v. Carney*, No. 12-C-9130, 2013 WL 3671288 at *8 (N.D. Ill. July 12, 2013) (finding that a plaintiff's claim seeking restitution as a legal remedy for a breach of contract was a remedy for a breach of contract claim and not an independent cause of action).[3] As such, the court dismisses count thirteen.

### 14. Count Fourteen: RICO & 18 U.S.C. §§ 1961, 1962, and 1964

In count fourteen, plaintiff alleges the Koehler defendants are liable under the civil RICO statutes because they developed a scheme in which they attempted to transfer plaintiff's parents' estate across state lines. He claims the Koehler defendants tried to advance their "scheme" through "racketeering activities" including "1) threats involving murder; ii) acts or threats involving kidnaping; iii) extortion; and iv) using their shoe or boot as an access device to gain access to [p]laintiff's locked bedroom." [89] ¶ 45. Aside from these allegations, plaintiff offers no factual support for his claim. In fact, he fails to specify what RICO statute and subsections the Koehler defendants are liable under and instead incorrectly cites the RICO statutes as 42 U.S.C. §§ 1961, 1962, and 1964. *See* [89] at 11. For the purposes of this motion, the court presumes plaintiff intended to assert claims under 18 U.S.C. §§ 1961, 1962, and 1964. Even with that assumption though, his claim fails.

When reviewing a motion to dismiss a RICO claim, the RICO statutes must be given a broad effect. *See Starfish Inv. Corp. v. Hansen*, 370 F. Supp. 2d 759, 768 (N.D. Ill. 2005) (citing *Morgan v. Bank of Waukegan*, 804 F.2d 970, 974 (7th Cir. 1986)). That said, a plaintiff asserting a RICO claim must "allege sufficient facts to support each element of [his] [] claims; it is not enough for plaintiff to simply allege these elements in boilerplate language." *Id.* (citing *Cobbs v. Sheahan*, 319 F. Supp. 2d 865, 869 (N.D. Ill. 2004)). In determining whether a plaintiff has alleged sufficient facts to support a claim, the court must examine what statute the plaintiff is bringing a claim under and note the significant differences among the RICO statutes and even the statutes' subsections. *Cf.* 18 U.S.C. § 1962(a) *and* 18 U.S.C. § 1962(b); *see also Starfish Inv. Corp.*, 370 F. Supp. 2d at 768.

---

[3]The court notes that dismissal of count thirteen does not bar plaintiff from seeking restitution damages for any claims that survive dismissal.

In this case, plaintiff failed to indicate what subsections of the RICO statutes the Koehler defendants are liable under. This makes the court's task of determining whether he has stated a claim difficult. However, the existence of an "enterprise" is an element that is fundamental to each of the RICO statutes and their subsections. *See* 18 U.S.C. § 1962; *Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1303-04 (7th Cir. 1987). Because of this, the court will first examine whether plaintiff has alleged the existence of an enterprise to determine whether the RICO claim survives dismissal.

An enterprise can be comprised of "any individual partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). While it can be an informal association-in-fact, "the hallmark of an enterprise is the structure[,] and the goals of the enterprise must be separate from the predicate acts themselves." *Starfish Inv. Corp.*, 370 F. Supp. 2d. at 769 (quoting *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 645 (7th Cir. 1995) (internal quotation omitted)); *see also Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 676 (7th Cir. 2000). "To establish structure, the plaintiff must allege that the association is "joined in purpose and organized in a manner amenable to hierarchal or consensual decision-making." *Id.* (quoting *Shapo v. O'Shaughnessy*, 246 F. Supp. 2d 935, 962 (N.D. Ill. 2002)). An enterprise must be more than a group of people who get together to commit a pattern of racketeering activity. *Richmond*, 52 F.3d at 644. It must be "distinct, separate, and apart from a pattern of racketeering activity." *Jennings v. Emry*, 910 F.2d 1434, 1439-40 (7th Cir. 1990). In other words, an enterprise is "defined by what it is, not what it does." *Id.* at 1440. Because of this, the court should "consider whether the enterprise would still exist were the predicate acts removed from the equation and whether the defendants' actions were motivated by anything other than self-interest." *Starfish Inv. Corp.*, 370 F. Supp. 2d at 769 (citing *Okaya v. Denne Indus.*, No. 00-C-1203, 2000 WL 1727785 at *4 (N.D. Ill. Nov. 20, 2000)).

Here, plaintiff's only allegations regarding the existence of an enterprise are that Carolyn and Doug Koehler "were capable of holding a legal or beneficial interest in the estate of Gerald and Phyllis Shea . . . [and] attempted to transfer part or all of the estate . . . through multiple fraudulent reports . . . and advanced their program through [various] racketeering activities . . .[.]" [89] ¶ 45. The word "enterprise" does not even appear in the second amended complaint. Indeed, the allegations in count fourteen amount to nothing more than two people who got together and engaged in RICO activities. *See Jennings*, 910 F.2d at 1440. This is insufficient to establish an "enterprise" for RICO purposes. Even when the court gives the second amended complaint the most liberal construction, there are simply not enough facts to infer that the attempt to transfer part of plaintiff's parents' estate was the work of a RICO organization, and not the work of two individuals seeking financial gain. As a result, plaintiff has failed to allege the existence of an enterprise and his RICO claim must be dismissed. *See id.*

It is also worth mentioning that even if plaintiff had alleged the existence of an enterprise, dismissal would still be appropriate. Plaintiff merely asserts that the Koehler defendants "attempted" to transfer part of the estate, he does not allege that any transfer actually occurred.

An attempt to transfer money is not prohibited under 18 U.S.C. § 1962. As such, plaintiff's RICO claim fails and count fourteen is dismissed.

*15. Count Fifteen: Malicious Prosecution*

In count fifteen, plaintiff claims the Koehler defendants and Tammie Hutzler are liable for malicious prosecution. He seems to allege that the Koehler defendants directed Hutzler to "intentionally and maliciously file[] an action seeking a restraining order . . ." and this action "had no legitimate purpose under the law." [89] ¶ 46. He claims this action was "denied outright by the court." *Id.*

As previously noted, a malicious prosecution claim in Illinois requires (1) the commencement of criminal proceedings by the defendants (2) the termination of those proceedings in favor of the plaintiff; (3) the absence of probable cause for those proceedings; (4) the presence of malice; and (5) resulting damages. *Williams*, 733 F.3d at 759. The absence of any of these elements prohibits a plaintiff from pursuing the claim. *Gardunio*, 674 F. Supp. 2d at 986-87 (citing *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)).

Setting aside the fact that plaintiff has failed to provide factual allegations to support his conclusory allegation of malice, he only alleges that the Koehler defendants are liable because they "instigat[ed]" Tammie Hutzler to file a restraining order against him. He does not state that the Koehler defendants commenced criminal proceedings against him. As such, the Koehler defendants cannot be liable for malicious prosecution in count fifteen. Furthermore, the second amended complaint is void of any allegations regarding the absence of probable cause. *See* [89] at 12. As a result, count fifteen fails to state a claim and it is dismissed.[4]

For the reasons above, the Koehler defendants' motion to dismiss [138] is granted in part and denied in part. All of the claims against Douglas Koehler are dismissed. Plaintiff's battery claim against Carolyn Koehler (count two), is the only claim that survives dismissal.

## B. The Winnebago County Defendants' Motion to Dismiss [123]

The Winnebago County defendants have also filed a motion to dismiss. *See* [123]. In their motion, they argue that counts sixteen and seventeen of the second amended complaint should be dismissed pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). The Winnebago County defendants also move to dismiss count twenty-three on behalf of States Attorneys Joe Bruscato and Marilyn Hite Ross. They contend count twenty-three should be dismissed because Bruscato and Ross are entitled to absolute prosecutorial immunity. *See* [124] at 12.

---

[4]The court is dismissing count fifteen in its entirety. While Tammie Hutzler is a named defendant in count fifteen and did not file a motion to dismiss, the court finds the pleadings deficient and finds dismissal appropriate. *See Moser v. Universal Eng'g Corp.*, 11 F.3d 720, 723 (7th Cir. 1993) ("The inherent authority of the district court to dismiss a case *sua sponte* and control its docket is well established.")

*1. Count Sixteen: 42 U.S.C. § 1983 against the Winnebago County Defendants*

In count sixteen, plaintiff claims the Winnebago County defendants are liable under 42 U.S.C. § 1983 for various conduct related to his wrongful incarceration. Specifically, plaintiff claims the Winnebago County defendants are liable for their refusal to allow plaintiff to use the phone, their refusal to provide plaintiff treatment for an injury, their refusal to provide him warm clothing, and their refusal to provide him medication. Plaintiff also alleges that the Winnebago County defendants are liable under Section 1983 for emotional abuse, spoliation of evidence and unlawful eviction. *See* [89] ¶¶ 47-59.

The Winnebago County defendants argue that count sixteen must be dismissed because plaintiff has failed to attribute specific conduct to each defendant and has otherwise failed to state a claim. They also point out that plaintiff has inappropriately included state law claims (such as spoliation of evidence) within his 1983 claim.

Plaintiff responds by claiming all of the Winnebago County defendants were personally involved in all of his alleged constitutional deprivations. He also argues that his spoliation of evidence claim is not intended to be brought under Illinois law and is instead asserted as a Due Process claim under the Fifth and Fourteenth Amendments.

While plaintiff's response brief clears up some of the confusing allegations in the second amended complaint, it is well established that a plaintiff cannot cure an otherwise deficient complaint through a response in opposition to a motion to dismiss. *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (stating that "[i]f a complaint fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint."); *see also Stevens v. Interactive Financial Advisors, Inc.*, No. 11-C-2223, 2012 WL 689265 at *5 (N.D. Ill. Mar. 2, 2012). As such, when determining whether dismissal is appropriate the court will examine only those allegations within the second amended complaint.

To state a claim under 42 U.S.C. § 1983 a plaintiff must allege that each defendant was personally involved in the alleged constitutional deprivation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To be personally responsible, an official must known about the conduct and facilitate it, approve it, condone it, or turn a blind eye. *Id.*

In the second amended complaint, plaintiff fails to allege which defendant was personally responsible for which constitutional deprivation and how each defendant facilitated or condoned the specific constitutional deprivations. *See* [89] ¶¶ 47-59. In fact, count sixteen does not mention what constitutional rights plaintiff believes the Winnebago County defendants violated. Although plaintiff argues all of the Winnebago County defendants are personally responsible for all of his alleged constitutional deprivations, this is highly unlikely since some of the allegations within count sixteen involve requests plaintiff made in jail, (*see* [89] ¶ 52), while others include his attempts to file a criminal complaint at the Winnebago County Justice Center. *See* [89] ¶ 55. The Winnebago County

defendants include jail personnel as well as Winnebago County Sheriff's officers. Thus, it is simply not possible that all of the Winnebago County defendants were personally involved in all of the alleged constitutional violations in count sixteen. Accordingly, plaintiff has not adequately alleged personal involvement and his Section 1983 claim must be dismissed.

The court also notes that if plaintiff intended count sixteen to constitute a *Monell* claim under Section 1983, the claim also fails. To hold a municipality liable under Section 1983, a plaintiff must allege "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice, that, although unauthorized, is so permanent and well-settled that it constitutes a 'custom or usage' with the force of law; or (3) an allegation that a person with final policymaking authority caused the injury." *Liska v. Dart*, No. 13-C-1991, 2014 WL 3704635 at \*9 (N.D. Ill. July 23, 2014) (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)). "A plaintiff alleging a widespread practice must plead facts that show that there is true municipal policy at issue, not a random event." *Id.* at \*10 (citing *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)).

Plaintiff here fails to allege a widespread practice or custom. Instead, he merely describes his personal experiences in the Winnebago County jail and claims he was wrongfully incarcerated. These allegations are insufficient to support a *Monell* claim. *See id.*; *see also Falk v. Perez*, 973 F. Supp. 2d 850, 863-64 (N.D. Ill. 2013) (dismissing a *Monell* claim because the plaintiff only alleged a single incident.).

Similarly, if plaintiff intended to pursue a *Monell* claim under the third prong (the final policymaking authority prong), his claim also fails. The second amended complaint does not allege that any of the Winnebago County defendants were a final policymaker that caused plaintiff's constitutional injuries. Instead, the complaint is riddled with conclusory allegations that leave defendants and the court speculating as to what it is plaintiff is trying to claim. Pleadings of this nature do not satisfy the federal pleading standards under Federal Rule of Civil Procedure 8(a)(2) as Rule 8(a)(2) requires that a complaint "give [a] defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations in count sixteen fail to give the Winnebago County defendants (and any other named defendants) notice of the grounds upon which plaintiff seeks relief. As such, count sixteen is dismissed.

## 2. Count Seventeen: ADA claim against the Winnebago County Defendants

In count seventeen plaintiff alleges that the Winnebago County defendants are liable under the ADA (42 U.S.C. §§ 12101-12103 and 12181-12189). *See* [89] ¶ 60. While unclear, it seems plaintiff is claiming that he informed various Winnebago County defendants of his disabilities when he was incarcerated, but all of the Winnebago County defendants refused to provide him reasonable accommodations.

The Winnebago County defendants contend Seventh Circuit precedent supports dismissal of this claim. They argue that prisons are not required to provide prisoners special accommodations

under the ADA and further state that plaintiff has failed to attribute any specific conduct to any of the named defendants. Although plaintiff responds and attempts to rebut their arguments, his arguments are disjointed and unpersuasive. *See* [133] at 13-14.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits or the services, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. For the purpose of the ADA, "discrimination" includes "not making reasonable accommodations to the services, programs, or activities of a public entity . . . [.]" 42 U.S.C. § 12112(b)(5)(A). To state a claim, a plaintiff must allege that (1) he is a qualified individual with a disability; (2) he was either excluded from participating in, or denied the benefits of, a public entity's services, programs or activities or was otherwise discriminated against; and (3) that such exclusion, denial or benefits, or discrimination was because of his disability. *See* 42 U.S.C. § 12132; *see also Wells v. Bureau County*, 723 F. Supp. 2d 1061, 1087 (C.D. Ill. 2010).

The court acknowledges that the ADA applies to inmates of the Illinois Department of Corrections. *See Johnson v. Randle*, 451 Fed. Appx. 597, 599-600 (7th Cir. 2011). Thus, to the extent the Winnebago County defendants are arguing dismissal is appropriate because the ADA does not apply to the Illinois prisons, the court rejects that argument. However, dismissal of count seventeen is appropriate for other reasons.

Even when the court assumes plaintiff suffered from at least one qualified disability under the ADA and the Winnebago County defendants failed to provide him accommodations for his disability, plaintiff has not provided enough factual detail to support a claim. *See Ashcroft v. Iqbal*, 556 U.S. 678 (2009). While he has alleged that he suffers from a litany of disabilities, he fails to identify the specific accommodation he requested, and fails to specify how each of the Winnebago County defendants refused to provide him his requested accommodation. Because of this, the court finds the allegations deficient under Rule 8(a)(2) and dismisses count seventeen. *See Riley v. Vilsack*, 665 F. Supp. 2d 994, 1007-08 (W.D. Wis. 2009) (dismissing a plaintiff's failure to accommodate claim because the plaintiff failed to provide "factual context for defendants' alleged failure to accommodate" and failed to "identify the accommodation he needed.").

*3. Count Twenty-Three: 42 U.S.C. § 1983 against Defendants Bruscato and Ross*

The Winnebago County defendants have also moved to dismiss count twenty-three. In count twenty-three plaintiff alleges that States Attorneys Joe Bruscato and Marilyn Hite Ross are liable under Section 1983 because they "wrongfully engaged in a protracted prosecution of [p]laintiff . . . [.]" [89] ¶ 67. He contends that both Bruscato and Ross had knowledge that the charges against him were "false and malicious," but proceeded with the prosecution anyway. *Id.* In their motion to dismiss, the Winnebago County defendants argue count twenty-three should be dismissed because Bruscato and Ross are entitled to absolute prosecutorial immunity.

Plaintiff responds that absolute immunity is not appropriate because the second amended complaint alleges that Bruscato and Ross were performing investigative functions, and not prosecutorial functions. The court disagrees.

The United States Supreme Court has held prosecutors acting in furtherance of their prosecutorial duties are entitled to absolute immunity. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1503-04 (2012). However, prosecutors acting under the color of state law in an investigatory role are only entitled to qualified immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 270-71 (1993). To determine whether a prosecutor is acting within the scope of his her/her prosecutorial duties, the court examines "whether the prosecutor is, at the time, acting as an officer of the court" as well as how much his/her actions relate to the judicial phase of the criminal process. *Fields v. Wharrie*, 672 F.3d 505, 510 (7th Cir. 2012). The Seventh Circuit has held that prosecutorial immunity "extends beyond an individual prosecutor's decision to indict or try a case." *Id.* (citing *Van de Kamp v. Goldstein*, 555 U.S. 335, 344-48 (2009).

While plaintiff contends his Section 1983 claim against Brucasto and Ross involves their role as investigators and not prosecutors, the second amended complaint states otherwise. The complaint states Brucasto and Ross are liable because they "wrongfully engaged in a protracted prosecution of [p]laintiff . . ." despite the fact that they knew the "charges against [him] were false and malicious." [89] ¶ 67. These allegations relate to Brucasto's and Ross' role as officers of the court, not their role as investigators. Moreover, the phrase "protracted prosecution" is undoubtedly related to the judicial phase of the criminal process, not the investigatory phase. *Id.* Therefore, the court concludes plaintiff's claim against Brucasto and Ross relates to their role as prosecutors and finds the two defendants are entitled to absolute prosecutorial immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (stating "[p]rosecutors are absolutely immune from suits for monetary damages under § 1983 for conduct that is "intimately associated with the judicial phase of the criminal process."). As such, count twenty-three is dismissed.

The Winnebago County defendants' motion to dismiss [123] is granted in its entirety. The Winnebago County defendants are dismissed from the suit. Defendants Joe Brucasto and Marilyn Hite Ross are also dismissed.

## C. UIC's Motion to Dismiss [105]

Counts sixteen through twenty-two are asserted against UIC. In its motion to dismiss, UIC claims it should be dismissed from the entire suit because of Eleventh Amendment immunity. Alternatively, UIC argues that dismissal is appropriate because plaintiff's claims are barred by the statute of limitations and because plaintiff fails to allege sufficient facts to form plausible claims. Plaintiff responds that Section 1983 and the ADA abrogate sovereign immunity. He also disputes UIC's statute of limitations argument and contends that the allegations in the second amended complaint are sufficient to survive dismissal.

The Eleventh Amendment bars actions in federal court against a state or state agency. *See Ind. Prot. & Advocacy Servs. v. Ind. Family & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010). There are three exceptions to Eleventh Amendment immunity: "(1) where Congress, acting under its constitutional authority conveyed by amendments passed after the Eleventh Amendment (the most common being the Fourteenth Amendment), abrogates a state's immunity from suit; (2) where the state itself consents to being sued in federal court; and (3) under the doctrine articulated by the Supreme Court in *Ex parte Young* . . . [.]" *Council 31 of the Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 882 (7th Cir. 2012) (citations omitted).

Here, plaintiff brings claims against UIC under Section 1983, the ADA, and various state laws. UIC is an agency of the State of Illinois and is therefore treated the same as the State for the purposes of the Eleventh Amendment. *Kroll v. Bd. of Trs. of Univ. Of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991).

As a preliminary matter, the court notes that it has already determined that counts sixteen and seventeen (plaintiff's federal claims under Section 1983 and the ADA) should be dismissed pursuant to Federal Rule of Civil Procedure 8(a)(2). *See supra.* As such, the court declines to address the applicability of Eleventh Amendment immunity with respect to those claims.[5] Therefore, the court turns to plaintiff's state law claims against UIC, (counts eighteen through twenty-two) and examines the applicability of Eleventh Amendment immunity with respect to those claims.

UIC contends it is immune from liability for all of plaintiff's claims. Plaintiff argues that Title II of the ADA abrogates Eleventh Amendment immunity, but fails to form a cognizable argument regarding whether UIC is entitled to immunity in counts eighteen through twenty-two. Instead, he references the "State Lawsuit Immunity Act" and contends that this is not applicable because of the Supremacy Clause of the United States Constitution. *See* [113] at 5. This argument lacks merit.[6]

---

[5]The court acknowledges that while UIC would undoubtedly be entitled to immunity for plaintiff's Section 1983 claim, (*see Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005)), the issue of sovereign immunity under Title II of the ADA is not as clear. In *United States v. Georgia*, the United State Supreme Court held that Title II of the ADA abrogates state sovereign immunity at least for those claims that independently violate the Constitution. *United States v. Georgia*, 546 U.S. 151, 159 (2006). However, the Supreme Court "left open the question whether the ADA could validly abrogate sovereign immunity for non-constitutional violations." *Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010). Indeed, the Court "counseled against jumping to the Eleventh Amendment immunity analysis if the case [could] be decided on grounds that Title II was not violated in the first place." *Maxwell v. South Bend Work Release Center*, No. 3:09-CV-008-PPS, 2011 WL 4688825 at *4, (N.D. Ind. Oct. 3, 2011). Because in this case, the court has already determined that plaintiff's conclusory allegations in count seventeen fail to satisfy the federal pleading standards, the court will not address whether UIC would be entitled to Eleventh Amendment immunity under plaintiff's ADA claim.

[6]The Illinois State Lawsuit Immunity Act, 745 Ill. Comp. Stat. 5/1, provides that the State of Illinois is immune from suit in any court, except as provided in the Illinois Court of Claims Act, 705 Ill. Comp. State. 505/8. The Illinois Court of Claims Act vests jurisdiction over state tort claims against the Board of Trustees of the University of Illinois in the Illinois Court of Claims. *See* 705 Ill. Comp. Stat. 505/8(d). These state immunity rules apply to plaintiff's state law claims in federal court. *See Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001)

The Eleventh Amendment forbids courts from exercising subject matter jurisdiction over claims against a state agency for monetary damages. *See Indiana Protection and Advocacy Services v. Indiana Family and Social Services Administration*, 603 F.3d 365, 370 (7th Cir. 2010). The United States Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).

UIC is a state agency and it has not consented to the instant suit. *See Kroll*, 934 F.2d at 909 (stating the Board of Trustees of the University of Illinois is a state agency). Counts eighteen through twenty-two seek monetary damages. *See* [89] at 28-30. Based on these facts, the court concludes it lacks subject matter jurisdiction over all the state law claims against UIC and UIC is entitled to Eleventh Amendment immunity.

Accordingly, UIC's motion to dismiss [105] is granted. UIC is dismissed from the suit.

**D. Shelli Sublett's Motion to Dismiss [128]**

Shelli Sublett has filed her own motion to dismiss. *See* [128]. In her motion, Sublett argues that plaintiff's claims against her fail because they are untimely. Alternatively, she contends plaintiff's claims fail under Rule 12(b)(6).

Sublett contends the claims against her are untimely because they relate to events which occurred in 2011 and she was not named as a defendant until April 14, 2014. Plaintiff responds that Sublett was included in his first complaint as a "Doe defendant" and after he discovered her identity through Rule 26(a)(1) disclosures, he specifically named her in the second amended complaint.

Because the court finds that all of plaintiff's claims fail under Rule 12(b)(6), the court declines to address the statute of limitations issue. Instead, the court will briefly explain why the counts eighteen through twenty-two fail as a matter of law.[7]

*1.) Count Eighteen: False Imprisonment*

In count eighteen, plaintiff alleges that Sublett, Lowery, UIC, and a doe Defendant are liable for false imprisonment. Plaintiff claims Sublett drafted a report and failed to take appropriate actions after she interviewed plaintiff and her "reckless and intentional" actions "contributed" to plaintiff's wrongful incarceration. *See* [89] ¶ 61. Sublett contends these allegations fail to state a false imprisonment claim. The court agrees.

---

(citations omitted). Thus, this court lacks jurisdiction over any state law claims asserted against UIC.

[7]Sublett was also a named defendant in counts sixteen and seventeen. However, the court has already determined those counts fail under Rule 8 (a)(2). *See supra*. As such, the court will only examine whether counts eighteen through twenty-two survive dismissal.

In Illinois, a claim for false imprisonment requires a plaintiff to allege that he was "restrained or arrested by the defendant[s], and that the defendant[s] acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *S.J. v. Perspectives Charter School*, 685 F. Supp. 2d 847, 861 (N.D. Ill. 2010) (citations omitted).

Here, plaintiff does not allege that Sublett restrained or arrested him. Instead, he claims that Sublett is liable because she "contributed to [his] wrongful incarceration." [89] ¶ 61. In Illinois, when a plaintiff seeks to hold a private party liable for false imprisonment because the private party provided information to police, the plaintiff must allege that the defendant was the "sole source" of information or allege that the defendant actually "commanded[ed], request[ed], or direct[ed]" authorities to arrest plaintiff. *Carey v. K-Way, Inc.*, 728 N.E.2d 743, 747-48 (Ill. App. Ct. Mar. 31, 2000) (citations omitted).

Plaintiff does not make such allegations. The second amended complaint does not state that Sublett was the "sole source" of information and does not allege that Sublett requested or commanded that plaintiff be arrested. Because of this, the court does not find plaintiff has stated a false imprisonment claim against Sublett. *See Olinger v. Doe*, 163 F. Supp. 2d 988, 991 (N.D. Ill. 2001) (stating that Illinois precedent seems to indicate that if the "defendant is not the sole source [of information], an actual request or command [to arrest] is necessary."). As such, Sublett is dismissed from count eighteen.

## 2. Count Nineteen: False Light

In count nineteen, plaintiff attempts to assert a claim for "false light." He alleges that Lowery and Sublett, "independently and intentionally, and maliciously published representations about [his] mental health . . . in a false light." [89] ¶ 62. Sublett argues that plaintiff's conclusory allegations fail to set forth a plausible claim.

"Illinois law recognizes a claim for false light invasion of privacy." *Kole v. Village of Norridge*, 941 F. Supp. 2d 933, 964 (N.D. Ill. 2013). This claim has three elements. First, the plaintiff must allege he "was placed in a false light before the public." *Id.* Next, he must allege that the "false light in which [he] was placed would be highly offensive to a reasonable person." *Id.* Finally, a plaintiff must claim that "the defendant acted with malice, meaning with knowledge, that the statements were false or with reckless disregard." *Id.* (citations omitted).

Here, plaintiff only alleges that Lowery and Sublett published false representations about his mental health in a false light and they did so "maliciously." [89] ¶ 62. He does not indicate what the actual representations were nor does he state where such representations were published. Moreover, plaintiff fails to mention whether such publications would be highly offensive to a reasonable person. Thus, even when the court gives these allegations the most liberal construction, there are insufficient facts to infer whether a reasonable person would find the alleged representations highly offensive. As such, the court concludes plaintiff's conclusory allegations fail to state a claim and fail to satisfy the federal pleading standards. Count nineteen is dismissed.

### 3. Count Twenty: Negligence

Count twenty purports to assert a claim against Sublett for negligence. Plaintiff alleges that Sublett "owed a duty to accurately record her conversation with [p]laintiff, to take reasonable steps to confirm the claims of [p]laintiff, and to take appropriate actions in view of the disclosures of that conversation." [89] ¶ 63. Plaintiff claims Sublett breached these duties and this resulted in damages. Aside from these allegations, plaintiff fails to offer any factual detail to support his claim.

First, these allegations are deficient under Federal Rule of Civil Procedure 8(a)(2), and the court could dismiss the claim on this basis alone. However, it is worth mentioning that this claim also fails because plaintiff has failed to provide a physician's certificate of merit supporting his claim. *See Rusinowski v. Village of Hillside*, 835 F. Supp. 2d 641, 652 (N.D. Ill. 2011) (stating "[a] physician's certificate of merit is required to file a medical negligence claim under Illinois law, even in federal court.") (citations omitted). Accordingly, count twenty must be dismissed.

### 4. Count Twenty-One: Battery

Count twenty-one is a state law claim for battery. Plaintiff alleges that Sublett is liable for battery because she had "actual notice" of plaintiff's auto-immune disorder and had the power to provide plaintiff warm clothes but did not and instead "knowingly, intentionally, and with malice, exposed [p]laintiff's body to harmful and offensive temperatures throughout [p]laintiff's incarceration." [89] ¶ 64.

Sublett argues these allegations do not state a claim for civil or medical battery because plaintiff has not alleged that Sublett touched plaintiff in any manner or performed any medical procedure on him. Plaintiff responds merely by stating that he disagrees with Sublett's assertions and asks the court to make a determination. *See* [134] at 13.

As previously mentioned, Illinois defines a civil battery as "the unauthorized touching of another that offends a reasonable sense of personal dignity." *Chelios v. Heavener*, 520 F.3d 678, 692-93 (7th Cir. 2008) (citations omitted). Plaintiff has not alleged that Sublett touched him without his consent. Thus, he has not set forth a civil battery claim against Sublett.

To the extent plaintiff intended count twenty-one to constitute a medical battery claim, it also fails. In Illinois, a claim of medical battery requires that "there was no consent to the medical treatment performed, that the treatment was against [plaintiff's] will, or that the treatment substantially varied from the consent granted." *Pantaleo v. Hayes*, No. 08-C-6419, 2013 WL 5311450 at * 18 (N.D. Ill. Sept. 20, 2013) (citing *In re Estate of Allen*, 848 N.E.2d 202, 210 (Ill. 2006)). The second amended complaint does not allege that Sublett performed a medical procedure on plaintiff. Therefore, count twenty-one also fails to state a claim for medical battery.

Accordingly, plaintiff has failed to assert a battery claim against Sublett and count twenty-one is dismissed.

*5. Count Twenty-Two: Intentional Infliction of Emotional Distress*

In count twenty-two, plaintiff claims Sublett and Lowery and two Doe defendants are liable for intentional infliction of emotional distress. He alleges that "[d]efendants were reckless, wanton and malicious and were an outrage that shocks the conscience." [89] ¶ 65. He states that he has "suffered profound and lasting emotional trauma as a result." *Id.* Aside from these boilerplate allegations, plaintiff offers no factual detail to support his claim. He does not specify what conduct from Sublett or Lowery or any of the Doe defendants was extreme and outrageous and fails to allege that any of the defendants knew such conduct was outrageous. These allegations fall short of satisfying the federal pleading standards. Therefore, count twenty-two is dismissed. *See Perspectives Charter School*, 685 F. Supp. 2d at 860 (dismissing a plaintiff's claim for intentional infliction of emotional distress because the "[c]omplaint fail[ed] to allege any specific facts that would show the various elements of an IIED cause of action[.]").

For these reasons, Sherri Sublett's motion to dismiss [128] is granted. Sublett is dismissed from the case.

## E. Wendy Lowery's Motion to Dismiss [106]

Wendy Lowery is a licensed nurse who allegedly provided plaintiff medical treatment at some point in 2011. The second amended complaint alleges Lowery is liable under counts sixteen through nineteen and count twenty-two. *See* [89] at 13-18. Lowery has filed her own motion to dismiss and argues that she should be dismissed from the case because plaintiff's claims against her are barred by the relevant statute of limitations. *See* [106]. Alternatively, Lowery contends plaintiff's claims should be dismissed pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).

The court has already dismissed counts sixteen and seventeen (plaintiff's Section 1983 and ADA claims) because plaintiff failed to allege personal involvement. *See supra*. Additionally, the court dismissed plaintiff's false light claim (count nineteen) because the second amended complaint did not provide enough factual detail to support a claim. *See supra*. The same is true with respect to plaintiff's intentional infliction of emotional distress claim (count twenty-two). As such, the only claim the court must address with respect to Lowery is count eighteen, plaintiff's false imprisonment claim.

In count eighteen, plaintiff alleges Lowery is liable because she "recommended that [p]laintiff . . . be incarcerated, and that based, at least in part, on her recommendation, [he] was incarcerated for over seventy hours." [89] ¶ 61. As the court previously noted, a plaintiff can sue a private party for false imprisonment if the party was the "sole source" of information the police relied upon to arrest the plaintiff. *See Olinger*, 163 F. Supp. 2d at 991. Additionally, there is a line of cases in Illinois which have found that a defendant maybe liable for false imprisonment even if he or she is not the arresting officer's sole source of information "if the defendant goes beyond

"providing information" and actually requests the arrest." *Id.* (quoting *Schmidt v. City of Lockport*, 67 F. Supp. 2d 938, 946 (N.D. Ill. 1999)).

Here, plaintiff has not alleged that Lowery was the sole source of information police used to effectuate plaintiff's arrest and has not alleged that Lowery directed or commanded police to incarcerate plaintiff. Instead, he only alleges that Lowery recommended that he be incarcerated and that this recommendation was part of the reason he was incarcerated. He fails to explain how or why her recommendation would cause authorities to arrest and incarcerate him. These threadbare allegations do not satisfy the pleading standards of Rule 8(a)(2) and do not form a plausible false imprisonment claim against Lowery. Accordingly, count eighteen is dismissed.

Based on the above, defendant Wendy Lowery's motion to dismiss [106] is granted. Lowery is dismissed from the case.

For all these reasons, defendants' motions to dismiss [105], [106], [123], [128], are granted. The Koehler defendants' motion to dismiss [138] is granted in part and denied in part. All of plaintiff's claims against the Koehler defendants are dismissed except for plaintiff's battery claim against Carolyn Koehler (count two). The Winnebago County defendants' motion to dismiss [123] is granted in its entirety. The University of Illinois College of Medicine's motion to dismiss [105] is granted. Defendant Wendy Lowery's motion to dismiss [106] is granted. Defendant Shelli Sublett's motion to dismiss [128] is granted. Tammie Hutzler is also dismissed. Carolyn Koehler is the only defendant that remains. The Magistrate Judge is to schedule an in person status hearing with plaintiff and all defense counsel including those where the claims have been dismissed.

Date: 9/10/2014                              ENTER:

_Philip G. Reinhard_
_____
United States District Court Judge

Notices mailed by Judicial Staff.     (LC)
Copy to Magistrate Judge Johnston

26